**Marquis Aurbach Coffing**
John M. Sacco, Esq.
Nevada Bar No. 1585
Christian T. Balducci, Esq.
Nevada Bar No. 12688
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
jsacco@maclaw.com
cbalducci@maclaw.com
*Attorneys for West Charleston Lofts III, LLC*
*And SAVWCL III, LLC*

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEST CHARLESTON LOFTS III, LLC, a Nevada limited liability company; SAVWCL III, LLC, a Nevada limited liability company,<br><br>Petitioners/Plaintiffs,<br><br>vs.<br><br>JOHN FARINA and TINA FARINA, in their capacities as co-trustees of the FARINA LIVING TRUST,<br><br>Respondent/Defendant. | Case Number:<br><br>**<u>PETITION TO COMPEL ARBITRATION AND MEDITATION, OR IN THE ALTERNATIVE, TO STATE A COMPLAINT AGAINST JOHN AND TINA FARINA, AS CO-TRUSTEES OF THE FARINA LIVING TRUST</u>**<br><br>**Oral Argument Requested Within 5 Days, 9 U.S.C. § 4** |

West Charleston Lofts III, LLC and SAVWCL III, LLC, by and through John M. Sacco, Esq. and Christian T. Balducci, Esq. of Marquis Aurbach Coffing, hereby petitions this Court for an order compelling John and Tina Farina, as co-trustees of the Farina Living Trust, to JAMs arbitration and mediation in accordance with the plain language of the Joint Venture Agreement. This pleading is brought pursuant to the Federal Arbitration Act and Vaden v. Discovery Bank, 556 U.S. 49 (2009).

A hearing is requested within 5 days of this filing pursuant to 9 U.S.C. §4. Id. ("Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties….").

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This petition stems from a disagreement between Plaintiffs West Charleston Lofts III, LLC ("the Lofts"), SAVWCL III, LLC ("SAVWCL III") and Defendants John and Tina Farina, co-trustees of the Farina Living Trust ("the Farina Living Trust"). Under the contract in question, disputes are to be resolved through arbitration. The Farina Living Trust's conduct has been in defiance of the contract's arbitration clause. The Lofts and SAVWCL III have filed this petition to compel the Farina Living Trust into arbitration and mediation in accordance with the plain language of an unambiguous contract.

Consequently, the Lofts and SAVWCL III hereby request an order compelling the Farina Living Trust into JAMs arbitration in Las Vegas, Nevada, in accordance with the contract's plain language. In connection with this, the Lofts and SAVWCL III request that the Court enter a stay so that an arbitration award can be enforced upon completion, should such proceedings become necessary. In the alternative, and only if the Court declines to compel arbitration, the Lofts and SAVWCL III request leave to file the proposed complaint attached to the accompanying appendix as **Exhibit 1** against the Farina Living Trust within this specific action.[1]

### II. PARTIES, JURISDICTION AND VENUE

#### A. FACTS RELEVANT TO PARTIES, JURISDICTION AND VENUE.

1. SAVWCL III is a Nevada limited liability company.

2. SAVWCL III has three members: the SAV Irrevocable Trust, the Lofts and Current, LLC.

a. The Lofts is a Nevada limited liability company. The Lofts' member is Nevada resident.

[1] Each exhibit referenced herein is attached to the accompanying appendix.

b. Current, LLC is a Delaware limited liability company. Current, LLC's member is not a California resident.

c. The SAV Irrevocable Trust is a Nevada business trust.

i. The SAV Irrevocable Trust's trustee is SAV Management, LLC.

ii. SAV Management, LLC is a Nevada limited liability company.

3. None of SAVWCL III's members are California residents.

4. Neither the Lofts manager nor member are California residents.

5. None of SAV Management, LLC's member(s) are California residents.

6. John and Tina Farina have held themselves out as the trustees of the Farina Living Trust.

7. Upon information and belief, John and Tina Farina reside at 10345 Glenbarr Ave., Los Angeles, CA 90064.

**B. LAW APPLICABLE TO PARTIES, JURISDICTION AND VENUE.**

8. SAVWCL III and the Lofts are Nevada citizens. See Johnson v. Colombia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

9. The Farina Living Trust is a California resident. Johnson, 437 F.3d at 899 ("A trust has the citizenship of its trustee or trustees.").

10. Diversity jurisdiction is properly vested in this Court in accordance with 28 U.S.C. § 1332 as there is complete diversity between the parties.

11. Through arbitration, SAVWCL III and the Lofts seek a declaration that of the rights, status, and legal relations addressed within the Joint Venture Agreement, **Exhibit 2**.

12. In or around 2006, the Farina Living Trust made a payment or loan in, to or through Aspen Financial Services, LLC, a Nevada limited liability company.

13. Upon information and belief, that payment or loan was $100,000.00.



MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

14. In connection with that payment or loan and subsequent transactions, the Farina Living Trust received $17,339.41.

15. By virtue of the Farina Living Trust's $100,000.00 initial payment or loan in 2006, the case and controversy requirement of $75,000.00 is satisfied.

16. This Court has personal jurisdiction over the Farina Living Trust because:

a. The Farina Living Trust availed itself of the privilege of doing business in Nevada when it communicated with Aspen Financial Services, LLC, a Nevada limited liability company, regarding infusing money into Aspen Financial Services, LLC or into loan(s) through Aspen Financial Services, LLC and then by infusing $100,000.00 into Aspen Financial Services, LLC or into loan(s) through Aspen Financial Services, LLC.

b. The Farina Living Trust further availed itself of the privilege of doing business in Nevada when it obtained a beneficial interest in a deed of trust that was previously recorded in the Official Records of the Clark County Recorder's Office in Book No. 20061002, Instrument No. 4360 ("the DOT") by virtue of that certain assignment recorded in the Official Records of the Clark County Recorder's Office in Book No. 20061103, Instrument No. 4192.

c. The Farina Living Trust further availed itself of the laws of the state of Nevada when its beneficial interest in the DOT was converted into a beneficial interest in the SAV Irrevocable Trust, which is a trust formed in Nevada with a Nevada trustee.

d. The Farina Living Trust further availed itself of the forum of Nevada when it sent a letter dated April 5, 2016 into the state of Nevada after its acceptance of $17,339.41 relating to its $100,000.00 payment or loan, and when its attorneys sent a demand letter dated October 6, 2016 into the state of Nevada relating to the $100,000.00 payment.

e. The Joint Venture Agreement, **Exhibit 2**, includes a forum selection clause that specifies the forum as "the courts of Clark County." See Joint Venture Agreement at pg. 9, ¶ 8(d), **Exhibit 2**.

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

f. The Joint Venture Agreement was signed by the Farina Living Trust's attorney-in-fact.

g. This petition is filed in the Southern Division of the District of Nevada, which is based in Clark County, Nevada.

h. Given the contacts the Farina Living Trust has had and has with Nevada, its burden in appearing within the state of Nevada, and specifically the District of Nevada, is low.

i. Again, the Farina Living Trust has already agreed to the courts of Clark County, Nevada by virtue of the Joint Venture Agreement.

j. By virtue of the Joint Venture Agreement, the Farina Living Trust has agreed to mediation and arbitration at JAMs in Las Vegas, Nevada.

k. Given the high level of contacts and the language of the Joint Venture Agreement, Nevada has a high interest in adjudicating the dispute.

l. It is more efficient to resolve the dispute in Nevada than in any other forum. Other than John and Tina Farina, each possible witness is located in Clark County, Nevada.

17. This Court can entertain petitions to compel arbitration if it would have jurisdiction "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties." <u>See</u> 9 U.S.C. § 4.

18. Because this Court has specific jurisdiction over the Farina Living Trust, and because diversity jurisdiction exists by virtue of 28 U.S.C. § 1332, this Court possesses both personal and subject matter jurisdiction over the parties and petition.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## III. RELEVANT FACTS

### A. BACKGROUND FACTS.

1. **On or around September 21, 2006**: Aspen Financial Services issued a promissory note identified as loan no. 10-00332-8 to the Lofts ("the Note"). The Note identifies Aspen Financial Services, LLC and a variety of other individuals and entities (listed on Exhibit A to the Note) as "the Lender." See the Note, **Exhibit 3**. The Farina Living Trust is not identified in Exhibit A. In connection with the Note, a deed of trust was recorded in the Official Records of the Clark County Recorder's Office in Book No. 20061002, Instrument No. 4360 ("the DOT") against certain real property known as APN 164-02-510-003 ("Parcel 1"). See the DOT, **Exhibit 4**. The same day, a grant, bargain and sale deed was recorded in the Official Records of the Clark County Recorder's Office in Book No. 20061002, Instrument No. 4357 ("the Parcel 1 GBS Deed"). The Parcel 1 GBS Deed conveyed title to Parcel 1 from Howard Hughes Properties, Inc. to the Lofts. At a later date, the Lofts acquired a parcel of real property adjacent to Parcel 1 ("Parcel 2") (Parcel 1 and 2 are collectively referred to as "the Property"). Parcel 1 is located near the southwest corner of W. Charleston Blvd. and the I-215W Beltway.

2. **October 30, 2006**: Aspen Financial Services, LLC assigned .5226% of its interest in the DOT to the Farina Living Trust. This assignment was reflected in an Assignment of the DOT recorded in the Official Records of the Clark County Recorder's Office in Book No. 20061103, Instrument No. 4192 ("Farina Assignment of DOT"). See Farina Assignment of DOT, **Exhibit 5**. As the Note had already funded, it appears that the Farina Living Trust paid Aspen Financial Services, LLC directly to acquire a beneficial interest in the DOT; though, this statement is made upon information and belief. The Farina Living Trust claims that it paid $100,000.00 for this beneficial interest. See Redacted Settlement Communication from the Farina Living Trust's Attorneys, **Exhibit 6**. In connection with this, the Farina Living Trust executed a loan servicing agreement in which Aspen Financial Services, LLC acted as the Farina Living Trust's attorney-in-fact.

3. **<u>In or around 2007</u>**: Residential home prices in southern Nevada plummeted as the Great Recession began. Residential home construction ceased nearly entirely. During this time period, construction for most developers did or would result in financial catastrophe. Howard Hughes Properties, Inc., the Clark County Treasurer's Office and the South Summerlin Association – among others – had recorded liens against the Property. Remember, Howard Hughes Properties, Inc. and the South Summerlin Association's liens were prior to the DOT because they were predicated upon CC&R's recorded against Parcel 1 years prior. Liens from the Treasurer are almost always prior, but, subject to redemption.

4. **<u>In or around 2011</u>**: Aspen Financial Services, LLC had begun the foreclosure process. It is important to keep in mind the time frame: 2011. This is when deficiency actions flourished, <u>Sandpointe</u> had not issued and the law regarding deficiency actions was far from settled. Rather than foreclose and become embroiled in deficiency litigation that, even today, is barely resolved before the Nevada Supreme Court, a joint venture was posed by Aspen Financial Services, LLC to each of the Note's investors.

5. **<u>May 17, 2011</u>**: Aspen Financial Services, LLC issued correspondence and vote request to each of the Note's investors ("the Aspen Investors"). The Farina Living Trust received this communication. <u>See</u> May 17, 2011 Vote Request, **Exhibit 7**. In essence, the proposal was to convert the debt into equity. Rather than foreclose and be subject to a variety of liabilities and become entangled in litigation with lien holders and in a deficiency action, the Aspen Investors would each convert their interest into a beneficial interest in an irrevocable trust. Aspen Financial Services, LLC apparently engaged in the same practice with almost all of its loans during this period of time.

In addition, a joint venture would be entered into with the SAV Irrevocable Trust, the Lofts and another partner that would funding to address the various liens against the Property, as well as certain holding costs (which exceeded $180,000.00 annually). In connection with this, a new entity would be formed, the SAV Irrevocable Trust would become a majority owner of the new entity, the Lofts would contribute the land to the entity




MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

in exchange for a minority ownership interest and cancellation of the Note and accompanying guaranties, and a capital partner that infused the new entity with cash would obtain an interest in the new entity. See May 17, 2011 Vote Request, **Exhibit 7**.

The vote passed: both as it relates to converting debt into equity and as it relates to the joint venture. The SAV Irrevocable Trust was formed, SAV Management, LLC became the trustee and the Aspen Investors converted their interest into a beneficial interest in the SAV Irrevocable Trust. The DOT was reconveyed shortly after. See Reconveyance of the DOT, **Exhibit 9**.

**B. THE JOINT VENTURE AGREEMENT.**

In furtherance of the joint venture, the SAV Irrevocable Trust, Aspen Financial Services, LLC and the Lofts executed a joint venture agreement dated January 18, 2012 ("the Joint Venture Agreement"). See Joint Venture Agreement, **Exhibit 2**. The new company based on the Joint Venture Agreement was called SAVWCL III, LLC ("SAVWCL III").

Under the Joint Venture Agreement, the Lofts contributed the Property (both Parcel 1 and 2) in exchange for an 8% interest. See Joint Venture Agreement at pgs. 3 – 4, **Exhibit 2**. The Aspen Investors cancelled the Note and accompanying guaranties; and in exchange, the SAV Irrevocable Trust received an 87% interest. Id. at pg. 3, ¶ 3(a)(ii). Later on, Current, LLC became the capital partner that provided the necessary cash infusion. Initially, the intent of SAVWCL III was to work with Howard Hughes Properties, Inc. to develop an auto-mall in the middle of Summerlin. The purpose changed later as Howard Hughes Properties, Inc. decided to no longer proceed in that venture. In accordance with the majority vote and the loan servicing agreement, Aspen Financial Services, LLC executed the Joint Venture Agreement on behalf of the Aspen Investors as their attorney-in-fact.

/ / / /

/ / / /

/ / / /

**C. THE ARBITRATION CLAUSE.**

The Joint Venture Agreement includes a very detailed arbitration clause. It is outlined on pages 7 and 8 of the Joint Venture Agreement, and is copied and pasted below for the Court's consideration:

> 7. MEDIATION AND ARBITRATION. The parties agree that any and all disputes, claims or controversies ("**Claim**") arising out of or relating to this Agreement (or its breach or default) or any other dealings between the parties, whether the Claim arose or is based upon events that occurred before or after the Effective Date and whether the Claim is based on contract, warranty, tort, statute or any other legal theory, that it is not resolved by negotiation between the parties, shall first be submitted to mediation administered by JAMS by one mediator in accordance with its then prevailing expedited rules at the time of filing of the demand for mediation. A request for mediation shall be filed in writing with JAMS and the other party.
>
> a. If the Claim is not resolved through mediation, then it shall be submitted to binding arbitration administered by JAMS under in accordance with its then prevailing expedited rules at the time of filing of the demand for arbitration. A request for arbitration shall be filed in writing with JAMS and the other party.
>
> b. All questions regarding the arbitrability of a Claim will be resolved by the arbitrator. If any party commences litigation in a court in violation of this arbitration provision, then upon the other party's written objection, the party that commenced the court action shall immediately stipulate to the dismissal of that action without prejudice. If the party commencing the court action fails to execute the stipulation within five (5) days after the other party's written objection, then the party that filed the court action shall reimburse the objecting party's litigation costs and expenses, including reasonable attorney's fees, incurred in obtaining a dismissal or stay

////

////

////

////

////

////

////

////

////

////

////

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

> of the court action. Notwithstanding the foregoing, nothing in this provision shall preclude a party from seeking preliminary injunctive relief under applicable law in a court of competent jurisdiction to preserve the status quo, pending a decision of the arbitrator.
>
> c. Unless the parties otherwise agree in writing, there shall be one (1) arbitrator. The venue of the mediation or arbitration proceeding shall be in Clark County, Nevada. The arbitrator may grant any remedy or relief that a court of competent jurisdiction would be authorized to enter under applicable law, including any equitable remedy such as specific performance, provided that such remedy or relief is within the scope of this Agreement (including any exclusions and limitations of liability). The arbitrator shall have no authority to award punitive damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. The decision of the arbitrator shall be final and binding on the parties, and judgment upon the arbitration award may be entered in any court of competent jurisdiction. After issuance of the arbitration award, the parties shall have thirty (30) days to comply with the award. If the parties fail to comply with the award within the thirty (30) day period, then any party seeking to enforce the award shall be entitled to recover, in addition to any amount awarded to it, an additional amount in attorney's fees and costs actually incurred to obtain enforcement of the award, including appeals.
>
> d. The mediation and arbitration provisions herein are the sole remedies by which a Claim shall be resolved, and each party waives its right to initiate judicial proceedings, including, without limitation, trial by jury. The parties shall participate in good faith in all mediation and arbitration proceedings. The fees and expenses of the mediation or arbitration proceeding established by JAMS (including the fees of the mediator and arbitrator) shall be shared equally by the parties. Except as provided above, each party shall pay its own expenses relating to the mediation or arbitration, including, without limitation, attorney's fees and costs (including the costs of any experts). This provision to mediate and arbitrate shall survive termination of the Agreement.

Id. at pgs. 7 – 8. The first and last sentence are the most important. The first sentence outlines the scope: **all** disputes of any nature between the parties are to be submitted to mandatory mediation and arbitration. The last sentence outlines the duration: “This provision to mediate and arbitrate shall survive termination of the Agreement.”

The Lofts executed the Joint Venture Agreement. Aspen Financial Services, LLC signed on behalf of all of the Aspen Investors identified on Exhibit A as their attorney-in-fact. The Farina Living Trust is identified on Exhibit A. Through its trustee, the SAV Irrevocable Trust signed the Joint Venture Agreement as well. All are subject to the arbitration provision within the Joint Venture Agreement. In connection with the Joint Venture Agreement, all parties performed their end of the bargain. SAVWCL III was formed and took title to the Property. See Quitclaim Deed to SAVWCL III, **Exhibit 10**.

**D. THE SALE.**

After multiple years, the Property was listed for sale. By this point, SAVWCL III had taken a loan to cover various holding costs associated with the Property that went above and beyond the capital partner's (Current, LLC) investment. Originally, SAVWCL III attempted to sell the Property to apartment developers as that was netting the highest offers. Then Howard Hughes Properties, Inc. sued the Lofts and SAVWCL III to enforce the development covenants, codes and restrictions that limited the Property to "for-sale, single-family residential units." While the Lofts and SAVWCL III were not enjoined from selling the Property, the Property was restricted to "for-sale, single-family residential units." In other words, only a well-respected residential home developer could purchase the Property.

Eventually, the Property was sold to the highest purchaser for $16,650,000.00 – millions more than each other residential home developer was willing to pay. SAVWCL III was still a defendant in the suit with Howard Hughes Properties, Inc. and Howard Hughes Properties, Inc. had a lis pendens against the Property. With the suit threatening the transaction's closing, SAVWCL III settled with Howard Hughes. The transaction closed, and after paying all contingencies (which included a loan for the holding costs and legal fees incurred during the Howard Hughes suit, payment of the Howard Hughes Properties, Inc. settlement, a $100,000.00 contingency holdback, outstanding association fees and other items), the remaining funds were distributed in accordance with the operative agreement. Each of the Aspen Investors were then paid in accordance with their pro-rata beneficial ownership of the SAV Irrevocable Trust.

**E. THE FARINA LIVING TRUST.**

On April 5, 2016, the Farina Living Trust sent a letter to SAVWCL stating that it was accepting $17,339.41 as "partial repayment of the loan (related to the Property made by us through Aspen Financial Services under protest and without prejudice to all rights to seek full repayment." See April 5, 2016 Letter from the Farina Living Trust, **Exhibit 11**. Next, the Farina Living Trust's lawyers asked for an accounting and a variety of other materials

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

from SAVWCL III. See Mr. Mason, Esq.'s June 29, 2016 Letter (exhibits excluded), **Exhibit 12**. SAVWCL III complied, provided an accounting and provided every other document requested in its possession, custody or control. See Mr. Balducci, Esq.'s July 19, 2016 Response with Exhibits, **Exhibit 13**.

Nothing was heard again until October 6, 2016, at which point the Farina Living Trust rebuffed arbitration, issued a letter, demanded money and threatened to file a lawsuit in Los Angeles, California in derogation of the Joint Venture Agreement. SAVWCL III and the Lofts now seek to bring claims against the Farina Living Trust in arbitration. SAVWCL III and the Lofts hereby move to compel arbitration and mediation pursuant to the Joint Venture Agreement (outlined in the arbitration complaint, **Exhibit 8**, which has already been submitted to JAMs).

## IV. LEGAL ARGUMENT

As set forth, this Court should compel arbitration.

### A. NATIONAL POLICY FAVORS ARBITRATING DISPUTES.

#### 1. The FAA Applies.

"A written provision in any … contract evidencing a transacting involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because the Joint Venture Agreement is silent as to whether NRS Chapter 38 et seq. or the Federal Arbitration Act ("FAA") govern the process to compel arbitration, the FAA applies. Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1269 (9th Cir.), opinion amended on denial of reh'g, 289 F.3d 615 (9th Cir. 2002).

/ / / /

/ / / /

/ / / /

/ / / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**2. <u>This Petition is Ripe.</u>**

Any party that is "aggrieved by the **<u>alleged failure, neglect</u>**, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Here, the Farina Living trust has failed, or at best neglected, to abide by the arbitration provision of the Joint Venture Agreement. In fact, it has threatened to file a lawsuit in Los Angeles, California – a forum that has no nexus whatsoever. The Farina Living Trust came to Nevada for these transactions and now has threatened a California lawsuit. In addition, the Farina Living Trust has ignored the mediation requirement in threatening to file suit in another state that has no relationship with SAVWCL III or the Lofts. The Farina Living Trust, therefore, has unquestionably failed and/or neglected to abide by the arbitration provision of the Joint Venture Agreement, and as a result, both SAVWCL and the Lofts are aggrieved.

**B. AN ORDER COMPELLING ARBITRATION SHOULD BE ENTERED.**

Because the FAA mandates that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" the FAA limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." <u>Cox v. Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1119 (9th Cir. 2008).

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**1. A Valid Agreement to Arbitrate Exists.**

There is no question that the arbitration agreement in the Joint Venture Agreement is a valid agreement to arbitrate. The Lofts agreed to it. SAVWCL is the culmination of the Joint Venture and is invoking its benefit. And, Aspen Financial Services, LLC signed on the Aspen Investors' (including the Farina Living Trust) behalf.

Section 2 of the FAA "declare[s] a national policy favoring arbitration" of claims that parties contract to resolve in that manner. Southland Corporation v. Keating, 465 U.S. 1, 10 (1984). While Section 2 carves out "grounds as exist at law or in equity," the United States Supreme Court clarified this section when it stated "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." Preston v. Ferrer, 552 U.S. 346, 353 (2008). "The merits of the claim and any defenses are for the arbitrator to evaluate, not the courts." Howard Elec. & Mech. Co. v. Frank Briscoe Co., 754 F.2d 847, 850 (9th Cir. 1985). In other words, courts hear challenges to the agreement to arbitrate. Arbitrators hear challenges to contracts as a whole.

In the event the Farina Living Trust attempts to claim that Aspen Financial Services, LLC did not have authority to sign as its attorney-in-fact, such a claim lacks merit. It signed a loan servicing agreement, it converted its interest and, at the very least, Aspen Financial Services, LLC acted as its authorized agent in executing the Joint Venture Agreement on its behalf. "Arbitration is supposed to be swift." Graphic Commc'ns Union, Chicago Paper Handers' & Electrotypers' Local No. 2 v. Chicago Tribune Co., 779 F.2d 13, 15 – 16 (7th Cir. 1985). Judge Posner opined "[t]hat the only harm an order to arbitrate does is to make the party against whom the order is issued litigate a dispute in a forum not of his own choosing." Id. Regardless, the Farina Living Trust manifested the ultimate acceptance: it cashed the check.

/ / / /

/ / / /

/ / / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**2. <u>SAVWCL III and the Lofts' Claims are Subject to Arbitration.</u>**

SAVWCL III and the Lofts' claims are subject to arbitration pursuant to the arbitration clause. The arbitration provision in question encompasses all disputes: "The parties agree that any and all disputes, claims or controversies ("**<u>Claim</u>**") arising out of **<u>or relating</u>** to this Agreement…" <u>See</u> the Joint Venture Agreement at pg. 7, **Exhibit 2** (emphasis added). Through arbitration, SAVWCL III and the Lofts seek a declaration of the parties' rights, status and legal relations within the Joint Venture Agreement. That is precisely the sort of dispute that falls within the Joint Venture Agreement's arbitration provision. Moreover, the parties expressly agreed all disputes relating to the Joint Venture Agreement would be arbitrated. That is why the arbitration provision "shall survive termination of the [Joint Venture] Agreement." <u>See</u> <u>id.</u> at pg. 8, **Exhibit 2**.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24 – 25 (1983). The Joint Venture Agreement mirrors this: "All questions regarding the arbitrability of a Claim will be resolved by the arbitrator." <u>See</u> Joint Venture Agreement at pg. 7, ¶ 7(b), **Exhibit 2**. "The mediation and arbitration provisions [] are the sole remedies by which a Claim shall be resolved, and each party waives its right to initiate judicial proceedings, including, without limitation, trial by jury." <u>Id.</u> at pg. 8, ¶ 7(d).

Arbitration provisions are readily enforced. So much so, that an arbitration agreement need not be signed and it is sufficient for the parties to manifest an intention to agree to arbitrate to enter an order compelling arbitration. <u>Starkman v. Seroussi</u>, 377 F.Supp. 518 (S.D.N.Y. 1974); <u>Ocean Industries, Inc. v. Soros Associates International, Inc.</u>, 328 F. Supp. 944 (S.D.N.Y. 1971). Arbitration demands for declaratory relief are also readily enforced, even if the requested declaration is for the right to arbitrate. <u>Milliman, Inc.</u>

v. Health Medicare Ultra, Inc., 641 F. Supp. 2d 113, 118 (D.P.R. 2009) ("Here, Petitioners have alleged a concrete injury that they are being deprived of their contractual right to arbitrate and that the injury is caused by Respondents' refusal to arbitrate.").

There can be no question that SAVWCL III and the Lofts' claims are subject to the arbitration clause. The Court should, therefore, enter an order compelling arbitration.

**3. JAMs is the Proper Forum.**

Courts are obligated to enforce arbitration provisions in accord with their language. The arbitration provision in question specifies JAMs are the arbitral panel and specifies arbitration under JAMs. The provision also provides that the procedure governing the arbitration shall be in accord with the rules of JAMs. The provision further specifies arbitration in Las Vegas, Nevada. Thus, the Court's order should enforce the arbitration provision, compel the Farina Living Trust to submit to JAMs, and identify the governing arbitral panel (JAMs) and accompanying rules as JAMs with forum in Las Vegas, Nevada.

**C. THE COURT SHOULD HEAR THIS PETITION WITHIN 5 DAYS.**

The FAA provides that a hearing for a petition for a motion to compel arbitration shall be heard within "[f]ive days' notice in writing of such application shall be served upon the party in default." 9 U.S.C. § 4. Courts have consistently concluded 5 days means 5 days, and that the ordinary rules regarding responsive pleadings do not apply. In fact, even mailing the petition suffices for service. Instructive is Unionmetal Stock Life Ins. Co. of America v. Beneficial Life Ins. Co.:

> The service and notice received by Beneficial satisfied the five days notice requirement set out in the Federal Arbitration Act. The fact that the Act provides that service be made "in the manner" provided by the Federal Rules of Civil Procedure must be held to refer, as its language suggests, to the manner in which notice is sent and not to the specific time provisions of the Federal Rules. In this case, service by registered mail accorded with the manner provided for by Fed.R.Civ.P. 4. To hold that, in addition, the twenty-day response period of Fed.R.Civ.P. 12(a) is incorporated in the Federal Arbitration Act would run contrary to the specific time provisions set forth by the Act.





MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d 524, 526 (1st Cir. 1985). In accord with 9 U.S.C. § 4, and in furtherance of the agreement to arbitrate, the Court should hold a hearing within 5 days for this petition.

**D. IN THE ALTERNATIVE, THE COURT SHOULD PROVIDE LEAVE TO STATE A COMPLAINT AGAINST THE FARINA LIVING TRUST.**

In the event the Court declines to compel arbitration, SAVWCL III and the Lofts hereby respectfully request leave to file the proposed complaint, **Exhibit 1**, against the Farina Living Trust before this Court within this action. See Fed. R. Civ. Pro. 15(2) ("The court should freely give leave when justice so requires.").

**V. CONCLUSION**

For the foregoing reasons, the Court should hear this petition within 5 days, grant the instant motion and compel the Farina Living Trust to submit to JAMs, and identify the governing arbitral panel and accompanying rules as JAMs with forum in Las Vegas, Nevada. In the event the Court declines to enforce the arbitration provision, the Court should provide SAVWCL III and the Lofts with leave to state and file their proposed complaint, **Exhibit 1**.

Dated this 25th day of October, 2016.

MARQUIS AURBACH COFFING

By *_/s/ Christian T. Balducci_*
John M. Sacco, Esq.
Nevada Bar No. 1585
Christian T. Balducci, Esq.
Nevada Bar No. 12688
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for West Charleston Lofts III, LLC And SAVWCL III, LLC*

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PETITION TO COMPEL ARBITRATION AND MEDITATION, OR IN THE ALTERNATIVE, TO STATE A COMPLAINT AGAINST JOHN AND TINA FARINA, AS CO-TRUSTEES OF THE FARINA LIVING TRUST** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 25th day of October, 2016.

☐ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

John and Tina Farina,
as Co-Trustees of the Farina Living Trust
10345 Glenbarr Ave.
Los Angeles, CA 90064

Caleb E. Mason, Esq.
Laura G. Payne, Esq.
BROWN WHITE & OSBORN, LLP
333 South Hope Street 40th Floor
Los Angeles, California 90071

*/s/ Cheryl Becnel*
An employee of Marquis Aurbach Coffing